James R. BOWMAN, Plaintiff,

v.

**UNITED STATES DEPARTMENT OF JUSTICE, FEDERAL PRISON SYSTEM, Defendant.**

Civ. A. No. CA80–0432–R.

United States District Court,
E. D. Virginia,
Richmond Division.

April 14, 1981.

James R. Bowman, pro se.

Robert W. Jaspen, Asst. U. S. Atty., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

James R. Bowman, proceeding *pro se*, brings this action to challenge the constitutionality, under the equal protection and due process clauses, of his mandatory retirement from the Bureau of Prisons at the age of 55. Jurisdiction is founded on 28 U.S.C. § 1331. Trial of this matter was held of February 2, 1981. Many of the material facts were entered by stipulation and Mr. Bowman himself was the only witness.

Mr. Bowman was born on August 8, 1922, and began his employment with the Bureau of Prisons on March 3, 1958 as a correctional officer at the federal penitentiary in Petersburg, Virginia. Three years later he was promoted to the position of maintenance shop foreman, with responsibility for repairing and maintaining machinery at the penitentiary. His next position was general foreman, supervising inmates working on construction projects, first at Allenwood, Pennsylvania, and then once again at Petersburg. Mr. Bowman's last assignment with the Bureau was project foreman at the penitentiary in Lewisburg, Pennsylvania. In that position, he supervised the work of private contractors performing construction work for the Bureau, ensuring that their work conformed to government specifications. As project foreman, he did not supervise inmates. However, his testimony established that he was in the presence of inmates during much of the working day; that he was expected to, and in fact did, assist in any way possible in the event of an inmate disturbance or emergency; and that his duties were such that he could at any time have been moved to a position in which he would once again have direct supervisory responsibilities over inmates.

In February 1978, Mr. Bowman wrote letters requesting an exemption from the mandatory retirement provisions applicable to Bureau of Prisons employees. His request was denied, and on March 31, 1978, the last day of the month in which he completed 20 years of service with the Bureau, he was retired.

Throughout his career with the Bureau of Prisons, Mr. Bowman was an extremely dedicated and competent employee. He received many awards and citations—for sustained superior performance, for special achievements, and for suggestions. Because he enjoyed his work and felt a strong loyalty to the Bureau, he desired to continue to work past the age of 55, and felt physically and mentally able to do so.

Mr. Bowman was retired pursuant to 5 U.S.C. § 8335(b), which requires that certain federal employees, including "law enforcement officers", be separated at age 55 or after twenty years of service, whichever comes later. A separate definitional section, 5 U.S.C. § 8331(20), provides that, for purposes of § 8335(b), the term "law enforcement officer" includes Bureau of Prisons employees "whose duties in connection with individuals in detention ... require frequent ... direct contact with these individuals in their detention, direction, supervision, inspection, training, employment, care, transportation, or rehabilitation...." While Mr. Bowman did not, at the time he was retired, have direct supervisory authority over individuals in detention, the Court finds that he was a law enforcement officer within the contemplation of the statute.

Mr. Bowman's complaint and testimony at trial can be construed to raise the following claims: that his involuntary retirement constituted age discrimination in violation of his Fourteenth Amendment right to equal protection; that the government's failure to provide him with an opportunity to contest the decision to terminate him by demonstrating his continued fitness violated the due process clause; that the provisions under which he was retired, 5 U.S.C. §§ 8331 and 8335(b), are superseded by the Age Discrimination in Employment Act; and that this Court can review, and should reverse, the decision of the Director of the Bureau of Prisons to deny Mr. Bowman an exemption from mandatory retirement.

The constitutionality of a mandatory retirement statute under the Equal Protection clause is determined under the rational basis standard. Because such a classification neither burdens the exercise of a fundamental right, nor functions so as to disadvantage a "suspect class", mandatory retirement does not violate equal protection if it is rationally related to a legitimate governmental purpose. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979).

The purpose of § 8335(b) is to maintain a fit and vigorous work force, capable of performing the frequently taxing duties inherent in law enforcement work, whether on the streets or in the prisons. There is no dispute as to the legitimacy of this objective. The issue, then, is whether or not the particular means chosen—mandatory retirement at age 55—is rationally related to the asserted purpose.

In *Murgia* the Supreme Court upheld, under a rational basis standard, a Massachusetts statute requiring uniformed police officers to retire at age 50. The Court finds the reasoning of that case dispositive of Mr. Bowman's claims. Here, as in *Murgia*, a legislative judgment was made that, because of the nature of the work, the individual's ability to perform in law enforcement gradually declines with age. And here, as in *Murgia*, a further judgment was made as to the approximate age at which the aging process begins to take its toll. The government need not come forward with empirical evidence to support the legislative findings; rather, the burden is on the person challenging the findings "to convince the Court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true". *Vance v. Bradley*, 440 U.S. 93, 111, 99 S.Ct. 939, 950, 59 L.Ed.2d 171. This burden has clearly not been met.

Drawing the line at age 55 understandably seems arbitrary to a person in Mr. Bowman's position. There is surely no compelling reason for choosing 55 rather than 53 or 57. But under the standard here appropriate, the classification selected need not be the best means, or the means least burdensome to other interests, to survive an equal protection challenge. It is sufficient if the classification chosen may rationally be thought to advance the asserted purposes.

Mr. Bowman is undoubtedly correct in asserting that some individual law enforcement officers beyond the age of 55 may continue to be as capable as, or even more capable than, some younger individuals. But as the Supreme Court stated in upholding mandatory retirement at age 60 for foreign service officers, "even if the classification involved here is to some extent both underinclusive and overinclusive, it is nevertheless the rule that in a case like this, 'perfection is by no means required.' " *Vance v. Bradley*, 440 U.S. 93, 108, 99 S.Ct. 939, 948, 59 L.Ed.2d 171 (1979) (citations omitted).

Finally, Mr. Bowman argues that the purported objective of § 8335(b) is belied by the statutory exemption which permits law enforcement officers who reach the age of 55 before they have completed twenty years of service to remain on the job until their pensions are secured. If strict scrutiny were the standard here, this argument might have merit, in that the exemption would tend to impeach any claim that retirement at age 55 was necessary to achieve the governmental purpose. The rational basis test, however, does not demand such a close fit between the legislative goal and the means chosen. The Court finds that it is not only permissible, but desirable, for Congress to recognize and make accommodation for countervailing interests, such as that of minimizing the hardship of early retirement by ensuring that no law enforcement officer is involuntarily retired before he has become eligible for a pension.

Mr. Bowman's testimony at trial may also be construed to raise the claim that the failure of the Bureau of Prisons to afford him an opportunity to demonstrate his continuing ability to perform his job violated his right to procedural due process.

■ Assuming, without deciding, that Mr. Bowman had a protected property interest in his employment, the Court finds that due process does not require that involuntarily retired law enforcement officers be given a hearing. The Court is in agreement with the United States Court of Appeals for the Second Circuit, which, in upholding mandatory retirement for civil service employees at age 70 against a due process challenge, stated that

> ... a determination of constitutionally mandated procedures requires that the interests of the individual in being afforded such safeguards be balanced against the burden to the state in conducting them.... [T]he administrative costs to the state of providing each retiree with a hearing would be enormous, and would far outweigh the hardship to the individual.

*Johnson v. Lefkowitz*, 566 F.2d 866, 869 (2d Cir. 1977), *cert. denied sub. nom.* 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1979).

■ Mr. Bowman's third argument is that the mandatory retirement provisions of § 8335 are superseded by the Age Discrimination in Employment Act, (ADEA) 29 U.S.C. §§ 621–634, which prohibits, with certain exceptions, mandatory retirement of federal employees.

This claim is without merit. The 1978 Amendments of the ADEA, Pub.L. 95–256, 92 Stat. 191 (April 6, 1978), left intact the provisions of 5 U.S.C. § 8335, requiring retirement of law enforcement officers at age 55. *See Palmer v. Ticcione*, 576 F.2d 459, 465, n.7 (2d Cir. 1978), *cert. denied* 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1979).

■ Finally, Mr. Bowman claims that this Court may review, and should reverse, the decision to deny his application for an extension.

Section 8335(b) permits the head of the agency, "where in his judgment the public interest so requires", to exempt a law enforcement officer from mandatory retirement until the age of 60. As heretofore noted, Mr. Bowman's application for such an exemption was denied on February 21, 1978, by the Director of the Bureau of Prisons.

The Court finds, however, that it lacks the power to review the decision of the Director of the Bureau of Prisons. It is significant that the language of the statute does not in any way limit the discretion of the agency head in denying an exemption, whereas it does limit his discretion in granting an exemption to those cases where "the public interest so *requires*." (Emphasis added.) It is not for the Court to decide whether such a restrictive exemption policy in general, or whether its application to any employee as able as Mr. Bowman, is wise.

It is clear that the exemption provision does not in any way create an entitlement to an extension, but rather grants the agency head complete authority to deny an application.